IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MICHELLE R. SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-23-002-SPS |
| ) | |
| MARTIN O'MALLEY,[1] ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Michelle R. Smith requests judicial review pursuant to 42 U.S.C. § 405(g) of the denial of benefits by the Commissioner of the Social Security Administration. She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

---

[1] On December 20, 2023, Martin J. O'Malley became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted for Kilolo Kiakazi as the Defendant in this action.

engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

### Claimant's Background

Claimant was born on January 19, 1971, and was 48 years old on the alleged disability onset date. (Tr. 245, 288).). She was 51 years old at the time of the administrative hearing. (Tr. 57). She has completed high school and has past relevant work experience as a registered nurse (RN), fast food worker, fast food manager, poultry dresser, grader of dressed poultry, and industrial cleaner. (Tr. 58, 78-79, 280-90, 298). Claimant alleges she has been unable to work since January 22, 2019. (Tr. 18).

### Procedural History

Claimant filed applications for Title II disability insurance benefits on August 2, 2019, and on August 25, 2020, she filed an application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. (Tr. 245, 259). Her applications were denied. ALJ Glenn A. Neel held an administrative hearing on May 31, 2022 (Tr. 50-86) and determined that Claimant was not disabled in a written decision dated July 28, 2022. (Tr. 12-29). The Appeals Council denied review, so the ALJ's written opinion became the final decision of the Commissioner for purposes of appeal.

### Decision of the Administrative Law Judge

In the July 28, 2022, decision, the ALJ acknowledged that all of Claimant's claims, both under Title II and Title XVI, had been consolidated. (Tr. 15). The ALJ made his decision at step five of the sequential evaluation. At step two, the ALJ found that Claimant had several severe physical and mental impairments, including degenerative disc disease of the cervical spine, degenerative changes of the lumbar spine, obesity, coronary artery disease status post-myocardial infarctions and stenting, obstructive sleep apnea, gastroesophageal reflux disease, hypertension,

neuropathy, major depressive disorder, and generalized anxiety disorder (20 CFR 404.1520(c) and 416.920(c)). (Tr. 18).

Next, he found that Claimant's impairments did not meet a listing. (Tr. 18). At step four, he found that Claimant retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) and 416.967(b)with the following qualifications:

> Claimant] can occasionally climb, balance, stoop, kneel, crouch, and crawl and she can frequently but not constantly handle and finger bilaterally. She can further understand and remember simple instructions, can use judgment to make simple work-related decisions, can have frequent interactions with supervisors and coworkers, can have occasional interactions with the public, can carry out simple instructions, and can deal with occasional changes in a routine work setting.

(Tr. 20-21). The ALJ found that this RFC prevented Claimant from returning to any of her past relevant work. (Tr. 26-27). Next, the ALJ proceeded to step five and determined that Claimant was not disabled because there was other work that exists in significant numbers in the national economy that she could perform. (Tr. 28).

## Review

Claimant stopped working in 2012 and surrendered her RN certification in 2013 after she was convicted of stealing medication from the hospital where she was working. (Tr. 59-60, 398). After she was fired from her most recent job in 2019, she continued looking for work but was unsuccessful. (Tr. 68). Claimant did not seek medical treatment until late 2020, however, she underwent two consultative examinations in late 2019. (Tr. 395- 401, 402 -412).

Claimant's first consultative exam was with psychologist Dr. Theresa Horton. (Tr. 395-401). She reported that she had not taken medication for depression or anxiety since 2018. (Tr. 399-400). She was casually dressed and appropriately groomed, maintained appropriate eye contact, and spoke normally. (Tr. 400). Her attitude was friendly, and her level of cooperation was

appropriate. (Tr. 400). She appeared socially appropriate, and her affect varied between anxious, depressed, and euthymic. (Tr. 400). She rated her mood as seven or eight out of 10. (Tr. 401). Dr. Horton opined that Claimant appeared to have problems in concentration but could understand most complex concepts. (Tr. 401).

Claimant's second consultative exam was with Dr. Christopher Sudduth. Dr. Sudduth recorded normal cardiovascular, pulmonary, and abdominal findings. (Tr. 405). His only abnormal finding was pain in Claimant's lower back (lumbar spine) and neck (cervical spine) with range of motion, as well as mildly positive straight leg raises. (Tr. 406). The remainder of the examination was "entirely unremarkable," including normal mental status, normal gait, full range of motion, full strength, normal sensation, and normal use of her hands. (Tr. 405-06, 408-11).

State agency psychological and medical consultants reviewed the record in late 2019 and mid-2020 to evaluate Claimant's limitations. *See* 20 C.F.R. § 404.1513a(b)(1) (such "consultants are highly qualified and experts in Social Security disability evaluation."). Dr. Ryan Jones and Dr. William Farrell found in a psychiatric review technique form (PRTF) that, for purposes of the B criteria, Claimant experienced moderate limitations. (Tr. 92-93, 106-07). Drs. Jones and Farrell found that Claimant could do work involving simple and detailed tasks, as well as limited interaction with others. (Tr. 97, 111-12). Dr. Mahendra Shah and Dr. Kim Rowlands found that Claimant had physical abilities consistent with the full range of medium work. (Tr. 94-95, 108-09). *See id.* § 404.1567(c) (defining medium work).

Claimant presented to a hospital emergency room twice in August 2020 with abdominal pain. (Tr. 425, 466). At the first visit, studies showed diverticulitis and a splenic infarction. (Tr. 484). At her second visit, studies showed only diverticulosis. (Tr. 429). The splenic infarct resolved

within several months. (Tr. 487). At both visits, providers observed that Claimant had normal range of motion, normal cardiovascular findings, and normal behavior. (Tr. 427-28, 471).

Between early 2021 and mid-2022 Claimant saw advanced practice registered nurse (APRN) Dana Pulliam. At her initial visit, she admitted that she had not taken any medication for her cardiac conditions in over a year. (Tr. 487). Although she had some swelling and tenderness in the left elbow resulting from a recent fall, an x-ray was normal. (Tr. 496). APRN Pulliam's examination findings were otherwise normal. (Tr. 489-94).

The next month, Claimant complained of a tingling and burning sensation in her feet, but APRN Pulliam observed normal sensation. (Tr. 500, 503). She also noted normal cardiovascular, pulmonary, and mental status findings. (Tr. 502-03). At her next visit in May 2021, Claimant asked for an antidepressant but declined a referral to counseling. (Tr. 506). She complained of chronic neck pain, but an x-ray showed only mild degenerative changes. (Tr. 506, 510). Other than a depressed mood and flat affect, examination findings were normal, including normal range of motion (including in the neck) and no neurological deficits. (Tr. 508-09).

Several months later, Claimant complained of worsening memory loss. (Tr. 512). A magnetic resonance imaging (MRI) study of her brain showed indicia of small vessel disease but no evidence of a residual or recurrent tumor, and mental status examination findings were normal. (Tr. 515, 552). In May 2022, Claimant denied any cardiac or mental symptoms although she had not refilled her medication for six months. (Tr. 517). She treated her migraines with over-the-counter Excedrin. (Tr. 517). APRN Pulliam's examination findings were all normal, including normal range of motion, mood, and behavior. (Tr. 519-20).

In late 2021, Claimant complained to APRN Paula Brosnan of daily chronic headaches and sleep issues. (Tr. 558). She denied any symptoms of pain or depression, and APRN Brosnan's

examination findings were all normal, including normal cardiovascular findings, neurological findings, mood, affect, and behavior. (Tr. 561).

The undersigned Magistrate Judge first addresses Claimant's assertion that the ALJ failed to develop the record by not ordering additional memory, cognitive, and intellectual testing. The record reveals there was sufficient information for the ALJ to make a disability determination, as evidenced by the ALJ's thorough discussion of the evidence. Indeed, the record before the ALJ included examination findings and a medical opinion from a consultative psychologist, two prior administrative medical findings from State agency psychological consultants, and mental status examination findings from Claimant's providers.

Moreover, Claimant's attorney never suggested to the ALJ that additional testing was required. (Tr. 53-54). "[I]n cases such as this one where the claimant was represented by counsel at the hearing before the ALJ, the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored, and the ALJ may ordinarily require counsel to identify the issue or issues requiring further development." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (quotation and citation omitted); *see also Tipton v. Comm'r of the Soc. Sec. Admin.*, No. CIV-20-359-KEW, 2023 WL 2525036, at *4 (E.D. Okla. Mar. 15, 2023) ("counsel did not request any additional development of the record by the ALJ" (citations omitted)).

Next, Claimant argues the ALJ's RFC assessment is not supported by substantial evidence. Claimant bears the burden of showing that limitations should be included in her RFC assessment. *See Howard v. Barnhart*, 379 F.3d 945, 948-49 (10th Cir. 2004). The ALJ found that Claimant had established that she had the RFC to perform a range of simple light work but did not establish greater limitations. (Tr. 20-21). In reaching that conclusion, the ALJ found that Claimant's

reported symptoms were inconsistent with other evidence and evaluated the medical source statements. (Tr. 21, 25-26). The Court finds substantial evidence supports the ALJ's findings.

"Since the purpose of the [symptom] evaluation is to help the ALJ assess a claimant's RFC, the ALJ's [symptom] and RFC determinations are inherently intertwined." *Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009). Claimant claimed to experience debilitating symptoms, including memory difficulties, daily headaches, arthritic pain, numbness and tingling in her feet, and shortness of breath. (Tr. 69, 74, 310). However, the ALJ found that these reported symptoms were inconsistent with other evidence. (Tr. 21). This finding is due "particular deference" by the Court. *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). That deference is appropriate here, as the ALJ found that Plaintiff's reported symptoms were inconsistent with: (1) objective medical evidence, (2) her activity level, (3) the gaps in her treatment, (4) the efficacy of her conservative treatment, and (5) the lack of medication side effects. (Tr. 23-24).

Specifically, the ALJ found that objective medical evidence did not support the degree of limitation Claimant alleged. (Tr. 23). *See* 20 C.F.R. § 404.1529(c)(4) ("[W]e will evaluate your statements in relation to the objective medical evidence."). The ALJ recognized the abnormal objective medical evidence in the record, including studies showing diverticulitis, a splenic infarction, and degenerative changes in the lower back, as well as clinical findings of abnormal sensation and reduced grip strength. (Tr. 22-23). But the ALJ also discussed studies showing only mild degenerative changes in Claimant's neck and clinical findings of normal range of motion, no neurological deficits, normal cardiovascular and pulmonary functions, no edema, and normal attention, speech, behavior, thought content, cognition, and judgment. (Tr. 22-23).

Regarding Claimant's activity level, the ALJ found that her activities of daily living were inconsistent with her reports of disabling symptoms. (Tr. 23-24). Claimant could care for pets,

prepare meals, perform household chores with breaks, go out alone, ride in a vehicle, shop in stores, manage her finances, and drive short distances. (Tr. 21, 23-24, 72, 75, 311-13). The "sporadic performance" of activities like performing a few household tasks "does not establish that a person is capable of engaging in substantial gainful activity," *Frey v. Bowen*, 816 F.2d 508, 516-17 (10th Cir. 1987), but an ALJ may consider such activities when, as here, they undercut a claimant's reported symptoms. *See Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010). The Tenth Circuit has recognized that an ALJ may consider similar activities when discounting a claimant's reported symptoms. *See id*. (finding that an ALJ reasonably determined a claimant's description of her daily activities did not indicate significant limitations, where the claimant could care for herself, her home, and her children, and also drive, shop, handle finances, garden, visit friends, and go out to eat).

The ALJ also noted the significant gaps in Claimant's treatment. (Tr. 24). She claimed she became disabled in January 2019, but there is no evidence of treatment between March 2018 and August 2020, or between August 2020 and March 2021. She said in 2021 that she had seen a neurologist one year earlier, but providers noted that the neurologist had not been in the area for years; the record shows no treatment with a neurologist in 2019 or 2020. (Tr. 24, 512). And Claimant reported she did not take her medications for extended periods. (Tr. 23, 399. 487, 517).

The ALJ considered Claimant's assertion that she lacked financial resources to obtain her medications and treatment on occasion (Tr. 24). *See Lewis v. Berryhill*, 680 F. App'x 646, 648-49 (10th Cir. 2017) (affirming an ALJ's decision to consider the fact that the claimant did not take pain medications, so long as the ALJ considers the claimant's explanation). However, the ALJ also noted that Claimant's providers had given her information about free and low-cost medical treatment that was available to her, and there is no evidence that she pursued this free or low-cost

treatment or was denied treatment due to expense (Tr. 24, 423). *See Qualls*, 206 F.3d at 1372-73 (ALJ reasonably noted the availability of free medical care and found the claimant failed to follow prescribed treatment). Moreover, the ALJ found that Claimant "had the means to continue smoking cigarettes." (Tr. 24; *see* Tr. 404, 488). The ALJ found that "[t]his indicates that [Plaintiff] had the resources to spend on medical care but opted to spend them elsewhere." (Tr. 24). *See Hill v. Barnhart*, 250 F. Supp. 2d 1286, 1290 (D. Kan. 2003) ("The fact that [she] spent money on [her] cigarette habit suggests that Plaintiff may have been able to afford medical care if it was necessary.").

Therefore, the Court rejects Claimant's argument that the ALJ did not sufficiently evaluate her subjective complaints. (Pl. Br. 9-12).

Finally, Claimant contends the ALJ did not give sufficient deference to the medical evidence. A review of the record, however, including the medical opinions and prior administrative medical findings support the ALJ's assessment of Plaintiff's RFC. Regarding Claimant's physical limitations, State agency medical consultants Drs. Shah, and Rowlands found that she had abilities consistent with the full range of medium work. (Tr. 94-95, 108-09). The ALJ found that these prior administrative medical findings were partially persuasive in that Claimant was more limited—the ALJ limited her to a range of light work. (Tr. 20-21, 25). *See* 20 C.F.R. § 404.1520c(b). No source opined that Claimant experienced greater physical limitations than the ALJ assessed.

Regarding Claimant's mental limitations, the ALJ was partially persuaded by the findings of State agency psychological consultants Drs. Jones and Farrell that she could do simple and detailed tasks, *i.e.*, semiskilled work. (Tr. 25, 97, 111-12). The ALJ was more persuaded by Dr. Horton's medical opinion, which the ALJ concluded supported a limitation to only simple work-

related decisions. (Tr. 20-21, 25, 401). The ALJ's finding of moderate limitations at step three did not mandate any additional or more significant mental limitations in the RFC assessment.

Therefore, the ALJ's finding that Claimant had moderate limitations in several B criteria did not mandate any specific findings within the RFC assessment. *See Morgan Comm'r of the Soc. Sec. Admin.*, No. CIV-20-362-KEW, 2023 WL 155447, at *4 (E.D. Okla. Jan. 11, 2023) ("Case law also supports that a finding of a limitation for the 'paragraph B' criteria does not necessarily translate to a work-related functional limitation for purposes of the RFC assessment." (citing *Beasley*, 520 F. App'x at 754; *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015))).

## Conclusion

The Court finds that correct legal standards were applied by the ALJ, and substantial evidence supports the ALJ's finding that Claimant could do other work existing in significant numbers in the national economy.

Accordingly, the decision of the Commissioner is hereby **AFFIRMED.**

**IT IS SO ORDERD this 27th day of February, 2024.**

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma